Juanita MISHER

v.

**HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY.**

Civ. A. No. 82–4253.

United States District Court,
E.D. Pennsylvania.

Aug. 7, 1983.

---

Susan Anderson, Donna Dougherty, Philadelphia, Pa., for plaintiff.

Jean Hemphill, Philadelphia, Pa., for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This motion for judgment on the pleadings comes in an action arising out of a loan made by defendant, Household Finance Consumer Discount Company, to plaintiff, Juanita Misher. Plaintiff alleges that defendant violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and Regulation Z, 12 C.F.R. § 226 (1981).[1]

The motion raises two issues involving disputed questions of fact not properly the subject of judgment on the pleadings.[2]

---

1. Pursuant to the Truth in Lending Simplification and Reform Act, 15 U.S.C. § 1604, the Federal Reserve Board prescribed a revision of Regulation Z effective October 1, 1981. Compliance with the revised regulation was optional until October 1, 1982, at which time the original Regulation Z, including appendices, interpretations, official interpretations and supplements, was repealed. Because the original Regulation Z was in effect at the time Household issued the disputed loan agreement form to Ms. Misher, it was the original regulation, as described in the text, with which Household was required to comply.

2. Plaintiff must await trial or summary judgment for determination of whether defendant failed to make required disclosures prior to consummation of the transaction, in that plaintiff allegedly executed the documents in blank and did not receive a copy of the loan agreement form until sometime after February 2, 1982. Although plaintiff argues that her allegations regarding the date on which she received the document have not been denied by defendant, defendant's general denial of any failure to comply with Regulation Z is sufficient in federal practice to withstand a motion for judgment on the pleadings. Plaintiff's general allegation is deemed responded to by defendant's general denial.

The remaining issue raised by the motion—and the only issue properly addressed at this point in the proceedings—is whether defendant's loan agreement form ("the form"), appended to this Memorandum, contains *per se* violations of TILA and Regulation Z. Plaintiff argues that the form violates TILA and Regulation Z because it fails to disclose properly the total of payments and the finance charge, and does not make its disclosures in meaningful sequence.

Plaintiff first complains that the use of the term "total of payments" violates TILA because it does not indicate that the total amount is payable in 36 months. Regulation Z clarifies the disclosure required with regard to payments:

(3) The number, amount, and due dates or periods of payments scheduled to repay the indebtedness and, except in the case of a loan secured by a first lien or equivalent security interest on a dwelling made to finance the purchase of that dwelling and except in the case of a sale of a dwelling, the sum of such payments using the term, "total of payments."

Regulation Z, 12 C.F.R. § 226.8(b)(3).

█ This provision has been strictly construed by courts encountering it. In *Smith v. No. 2 Galesburg Crown Finance Corp.,* 615 F.2d 407 (1980), the Seventh Circuit mandated "strict adherence to the required terminology under the statute and regulations," refusing to "countenance deviations from those requirements, however minor they may be in some abstract sense." *Id.* at 417. The court found a violation of Regulation Z in "the use of the term 'AMOUNT OF NOTE INCL. CHGS. (TOTAL PAYMENTS)' instead of the required term 'total of payments.'" *Id.* The court concluded that "the method of disclosure used (here) was improper, and that the figures should simply have been disclosed as ... 'total of payments' ..." *Id.*[3] The description suggested by plaintiff—incorporating

into the disclosure of the "total of payments" an indication that the total amount is payable in 36 monthly payments—would fail to meet the *Smith* requirements of standardized terminology and would violate Regulation Z. The information sought by plaintiff—that the total amount is payable in 36 monthly payments—now appears directly below the "total of payments." Defendant has disclosed in the simple terminology prescribed by section 226.8(b)(3) the sum, number and amount of the payments as well as the due dates or periods of the payments. Plaintiff proposes no design in compliance with section 226.8(b)(3) that is any clearer.[4]

█ Plaintiff's next specific complaint is that the definition of "finance charge," set forth in the section called "payment," is improperly located outside the bar grid section and so violates § 226.8(d)(3). Section 226.8(d)(3), however, prescribes not the location but the substance of the "finance charge" description. It requires disclosure of "the total amount of the finance charge, using the term 'finance charge,' and where the total charge consists of two or more types of charges, a description of the amount of each type." Regulation Z, 12 C.F.R. § 226.8(d)(3) (footnote deleted).

The language of Regulation Z thus does not support plaintiff's claim that disclosure of the finance charge must appear in any particular place on the form.

The Eleventh Circuit discussed disclosure of the finance charge in *Besaw v. General Finance Corporation of Georgia,* 693 F.2d 1032 (1982). In that case, the finance charge consisted of three separate components, the "interest charge," the "prepaid finance charge" and the "maintenance charge." The form described the composition of the finance charge at a point three or four inches below the bar grid. While the first two components appeared in the

---

**3.** *See also McGowan v. King Inc.,* 569 F.2d 845, 848 (5th Cir.1978) (the failure to use required terminology results in a violation of TILA).

**4.** The form's clarity weakens substantially plaintiff's argument that the average unsophisticated consumer would not know that the "total amount" is payable in 36 monthly payments.

second of three rows on a bar grid, the maintenance charge appeared in the third row, next to the finance charge. The court held that the component charges, though "arithmetically related to each other," were "mixed with items which [were] irrelevant to a progression of arithmetical computation or thought." 693 F.2d at 1036. The components of the finance charge were not "presented in an order which [would] assist the customer in understanding their relationship." 693 F.2d at 1036.

The form in *Besaw* was, in this respect, more confusing than the one used by Household. Were the average consumer to examine the form used in *Besaw,* there would be nothing to draw attention to the bottom row, to suggest that the "maintenance charge" is part of the finance charge. Household's form, on the other hand, places both components of the finance charge next to one another on the second row. Although Household's "finance charge" appears in the bottom row, its relationship to the two components is clear.[5] When the average customer reads, "[t]he Finance Charge is the total of Interest plus Service Charge," those components and their relationship are readily discernible.[6]

Plaintiff's final complaint is that defendant violated Regulation Z by failing to make its disclosures on the bar grid in meaningful sequence as required by Regulation Z:

Disclosures; general rule. The disclosures required to be given by this part shall be made clearly, conspicuously, in meaningful sequence, in accordance with the further requirements of this section,

and at the time and in the terminology prescribed in applicable sections.

Regulation Z, 12 C.F.R. § 226.6(a).

The Seventh Circuit explored the requirement of meaningful sequence in *Allen v. Beneficial Finance Co. of Gary, Inc.,* 531 F.2d 797 (1976). That court turned to Federal Reserve Board Interpretation # 780 (April 10, 1974) for some clarification of "meaningful sequence":

The words "in meaningful sequence" in § 226.6(a) relate to a presentation of required disclosures in a logical order with respect to those items which have an arithmetical relationship to each other. For example, many of the items called for in § 226.8(b), (c) and (d) are arithmetical and follow each other in logical progression. The remaining items are informative and have no particular interdependence. A meaningful sequence would call for those items which are arithmetically related to appear within a reasonable proximity to each other, not mixed with items which are irrelevant to a progression of arithmetical computations or thought. We realize that it is not always practical to list the items in vertical order, but in keeping with the purpose of the Truth in Lending Act, they should be placed in reasonable proximity to each other so that the customer will not be required to search for any arithmetical items which should logically follow a previous one.

531 F.2d at 801, quoting 4 CCH Consumer Credit Guide ¶ 31,102.

Plaintiff complains that various disclosures located on the bar grid of the form are not grouped together in meaningful sequence.[7] Plaintiff bases her allegations on

5. The problem of non-standard terminology addressed in *Smith* arises here as well. Were defendant to adopt the sort of description suggested by plaintiff, defendant would run afoul of the requirement of standard terminology. 615 F.2d at 417.

6. Upon a thorough reading, the form is quite clear. The consumer is, after all, presented with a form and expected to read it in its entirety. *See Household Consumer Discount Company v. Payne,* 62 Ohio App.2d 181, 405 N.E.2d 729 (1978).

7. Plaintiff's allegations are as follows:
a. "Number of payments," "amount of payments" and "total of payments" should be but are not in reasonable and logical order.
b. "Finance charge," "service charge" and "interest" should be but are not grouped together in meaningful sequence.
c. Because "total of payments" is the sum of "amount financed" and "finance charge," the three should appear together.
d. The "amount financed" is confusing because it appears both on the bar grid and in the lower third of the form, and only in the lower

the Board's direction that "meaningful sequence would call for those items which are arithmetically related to appear within a reasonable proximity to each other, not mixed with items which are irrelevant to a progression of arithmetic computations or thought." *Allen,* 531 F.2d at 801. Plaintiff fails to recognize, however, that the form contains many progressions of arithmetic computations. One item on the bar grid may relate arithmetically to several figures and be part of several separate progressions. For example, in order to disclose clearly the components of "total of payments"—"interest," "service charge" and "amount financed"—Household must place the "total of payments" figure next to those components, although they are wholly unrelated to a different progression reflecting the method of payment—"payments," "total amount payable in 36 monthly payments" and "total of payments." The fact that "interest" is irrelevant to the latter progression does not mean that Household has "mixed" the "total of payments" figure with "items which are irrelevant to a progression of arithmetical computations or thought." In short, Household has not placed items on the bar grid which "have no particular interdependence" with items surrounding them.

As a lending agency like Household designs a loan agreement form, it must make its disclosures in accordance with the goals

part of the form is it explained that the amount financed is comprised of the balance of the

of the TILA: "Although the requirements of meaningful sequence mandate no one arrangement and can be fulfilled in many ways, whatever form is chosen must always reflect the dominant purposes of the Truth in Lending Act." *Allen,* 531 F.2d at 802. The purpose of the TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit. . . ." 15 U.S.C. § 1601(a).

■ For purposes of comparison, the disclosures most important to the consumer include the "finance charge," the "annual percentage rate" and the "total of payments." Household has presented these items in a way that complies with Regulation Z, promotes clarity of disclosure, and, most importantly, allows the consumer to compare the loan with others available to him.

Moreover, it is unclear that a superior arrangement of the information exists. Household's form promotes the goals of TILA and Regulation Z as it makes clear the terms of the loan and affords the consumer the opportunity to use credit in a knowing and responsible way.

For these reasons, in the accompanying Order, plaintiff's motion for judgment on the pleadings is denied.

previous loan ("loan proceeds") and "official fees."

# APPENDIX

LICENSED UNDER CONSUMER DISCOUNT COMPANY ACT

1813 E. ALLEGHENY AVENUE
PHILADELPHIA, PENNSYLVANIA 19134
PHONE: 426-0300

ORBIT SYSTEM

**BORROWERS (Called "I"):**

77012-6
LOAN NO

MISHER, JAUNITA
4919 MORRIS ST
PHILA PA 19144

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

25

| ESTIMATED DATE FINANCE CHARGE BEGINS IF DIFFERENT FROM DATE OF AGREEMENT: |
|---|
| 2-2-82 |

| DATE OF CONTRACT | FIRST PAYMENT DUE DATE | OTHERS SAME DAY OF EACH MONTH | FINAL PAYMENT DUE DATE | PAYMENTS FIRST | OTHER |
|---|---|---|---|---|---|
| 01/25/82 | 02/25/82 | | 01/25/85 | $ 56.00 | $ 56.00 |

| TOTAL OF PAYMENTS | INTEREST | SERVICE CHARGE | AMOUNT FINANCED | GROUP CREDITOR INSURANCE CHARGES LIFE | DISABILITY | | | |
|---|---|---|---|---|---|---|---|---|
| $ 2016.00 | $ 574.56 | $ 15.00 | $ 1426.44 | $ NONE | $ NONE | | | |

| TOTAL AMOUNT PAYABLE IN | | OFFICIAL FEES | FINANCE CHARGE | ANNUAL PERCENTAGE RATE | SECURITY AGREEMENT | REAL ESTATE MORTGAGE |
|---|---|---|---|---|---|---|
| 36 MONTHLY PAYMENTS | | $ 27.50 | $ 589.56 | 24.049 % | YES | YES |

NO CREDIT INSURANCE IS REQUIRED TO OBTAIN THIS LOAN. I may buy either (1) credit life insurance or (2) credit life and disability insurance. (See certificate for details of coverage.) The only insurance you offer is written by the Company of your choice. Your affiliate or subsidiary may profit from its sale. No insurance is provided unless I request it below. The insurance covers the person who requests the insurance.

DATE:

1/25/82

| CREDIT LIFE AND DISABILITY INSURANCE | CREDIT LIFE INSURANCE ONLY | NO INSURANCE |
|---|---|---|
| | | X Jaunita Misher |

CANCELLATION: Within 15 days after this loan is made, I may cancel all (but not part) of the credit insurance bought and receive a full refund of credit insurance charges. All persons signing this Loan Agreement must agree to cancel and all credit insurance certificates must be returned.

REQUIRED INSURANCE. I must obtain insurance covering security for this loan as indicated below, naming you as Loss Payee:

YES / NO

| ✓ | | Fire and extended coverage insurance on real estate |
| | | Physical damage insurance on motor vehicle marked "insured" under "Security" below |
| | | Physical damage insurance on other property marked "insured" under "Security" below |

I may obtain any required insurance from anyone I choose. (See "Security" paragraph below for description of security to be insured.)

PAYMENT. I shall pay you the Total of Payments, the sum of Finance Charge plus Amount Financed, in monthly payments as stated above. The Finance Charge is the total of Interest plus Service Charge. I may pay more at any time. I will pay at your business address or other address given me. If more than one Borrower is named above, you may enforce this contract against all, or any, Borrowers, but not in a combined amount greater than amount owed.

DATE ON WHICH FINANCE CHARGE BEGINS. If this loan is secured by real estate ("YES" appears under "Real Estate Mortgage" above) and I do not cancel this loan, the date on which Finance Charge begins, payment dates, and effective date of insurance purchased above are postponed by the number of days from this contract's date to date I receive this loan.

AMOUNT FINANCED. I authorize disbursement of Amount Financed as follows:

1. To HFC on account number . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
2. To: _____ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
3. To: _____ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
4. To: _____ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
5. Cash or check to borrowers . . Ck #7428 Ph.71 F0 #77012-6 . . . . . $ 1398.94
6. LOAN PROCEEDS (sum of 1 through 5) . . . . . . . . . . . . . . . . . . . . . . . . $ 1398.94
7. Official Fees (for filing or releasing security interests) . . . . . . . . . . . . . . . . $ 27.50
8. Credit Life Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
9. Credit Disability Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
AMOUNT FINANCED (sum of 6 through 9) . . . . . . . . . . . $ 1426.44

PREPAYMENT. If I fully pay before final payment due date, the amount I owe will be reduced by unearned Interest (but not Service Charge) determined by the "Rule of 78ths."

LATE CHARGES. If I don't pay any payment in 10 days after it's due, I will also pay 1½% per month on the amount overdue (subject to a $1.00 minimum charge).

EXTENSION CHARGES. If I don't pay any payment in 60 days, instead of a late charge, you may move the due dates of all unpaid payments ahead one or more full months. The charge for this is 1½% per month on the amount extended until one full scheduled payment is paid. Payments will be applied first to the extension charges regardless of amount of payment. In other cases, a similar extension charge will be collected only with the borrower's separate agreement.

FAILURE TO PAY. If I don't pay on time or fail to keep the insurance required above in force, all my payments may become due at once and, without notifying me before bringing suit, you may sue me for the total amount I owe, less the unearned Finance Charge I would receive if I fully prepaid, except that, if this loan is secured by real estate, you will first notify me of my right to bring my account up to date. I shall also pay your attorney fees and court costs if you refer this contract to an attorney (not your salaried employee) for collection. If you take possession of security described below because I don't pay on time, you will notify me of my right to bring the account up to date within 15 days and get the security back.

SECURITY. (1) You may use any benefits from insurance purchased or required under this contract to pay amounts I owe. (2) If "Yes" is under "Security Agreement" above, I give you a Security Interest under the Uniform Commercial Code in: (a) all my household and consumer goods (other than a motor vehicle, unless described below) now located at my address stated above, and (b) any property listed below. (3) If "Yes" appears under "Real Estate Mortgage" above, there is a mortgage on my real estate (with waiver of applicable homestead or other exemptions and stay of execution rights) located at my address stated above, unless a different address is stated below.

BORROWERS COPY